IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-65-D

RISE' H. HOYLE,                          )
                                         )
              Plaintiff,                 )
                                         )
      v.                                 )          **ORDER**
                                         )
CUMBERLAND COUNTY HOSPITAL               )
SYSTEMS, INC.,                           )
                                         )
              Defendant.                 )


On February 5, 2024, Rise' H. Hoyle ("Hoyle" or "plaintiff"), filed a pro se complaint [D.E. 1] and a motion to proceed in forma pauperis [D.E. 3]. In her complaint, Hoyle alleged that her former employer Cumberland County Hospital Systems, Inc., d/b/a/ Cape Fear Valley Medical Center ("Cape Fear" or "defendant") wrongfully discharged her in violation of North Carolina law and violated Title VII of the Civil Rights Act of 1964 ("Title VII"). See id. On February 7, 2024, the court referred the case to United States Magistrate Judge Robert T. Numbers, II for a Memorandum and Recommendation ("M&R") and frivolity review [D.E. 5]. See 28 U.S.C. § 636(b)(1). On May 17, 2024, Magistrate Judge Numbers recommended that the court grant the motion to proceed in forma pauperis, allow plaintiff's Title VII retaliation claim to proceed, and dismiss the remainder of Hoyle's complaint without prejudice [D.E. 6]. On May 30, 2024, Hoyle objected to the M&R [D.E. 7]. On June 10, 2024, the court overruled Hoyle's objection, adopted the M&R, allowed Hoyle's Title VII retaliation claim to proceed, and dismissed the remainder of Hoyle's complaint without prejudice [D.E. 8].

On August 2, 2024, Cape Fear moved to dismiss Hoyle's Title VII retaliation claim [D.E. 16] and filed a memorandum in support [D.E. 17]. On August 21, 2024, Hoyle filed a "motion to deny defendant's motion to dismiss and response in opposition" [D.E. 19]. That same day, Hoyle also filed an amended complaint. See Am. Compl. [D.E. 20]. In Hoyle's amended complaint, Hoyle alleges (1) race discrimination in violation of Title VII (count one), (2) national origin discrimination in violation of Title VII (count two), (3) a racially hostile work environment in violation of Title VII (count three), (4) retaliation in violation of Title VII (count four), (5) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 et seq. (count five), (6) disability discrimination in violation of Title I of the Americans with Disabilities Act ("Title I"), 42 U.S.C. §§ 12101, et seq. (count six), (7) retaliation in violation of the ADA (count seven), and (8) wrongful discharge in violation of North Carolina public policy (count eight). See id. 1–18.

On September 4, 2024, Cape Fear replied in support of its motion to dismiss [D.E. 21]. On September 16, 2024, Hoyle filed an "amended motion to deny defendant's motion to dismiss" [D.E. 25] and a document titled "argument and opposition" [D.E. 26]. On September 18, 2024, Hoyle purported to amend her amended complaint [D.E. 27].

On September 25, 2024, Cape Fear moved to dismiss Hoyle's amended complaint [D.E. 28] and filed a memorandum in support [D.E. 29]. See Fed. R. Civ. P. 12(b)(1), (6). On November 14, 2024, Hoyle filed two responses in opposition. See [D.E. 34, 35]. On November 27, 2024, Cape Fear replied [D.E. 36]. As explained below, the court grants Cape Fear's motion to dismiss the amended complaint and dismisses without prejudice Hoyle's amended complaint.

2

I.

Hoyle is a 61-year-old "mixed race" woman who considers herself "white/Caucasian." See Am. Compl. 1, 3, 5. From 2019 until August 27, 2021, Hoyle worked for Cape Fear as a registered nurse. See id. Hoyle alleges she performed her job satisfactorily. See id. at 2. In March 2021, Hoyle expressed interest in two open positions at Cape Fear—patient care manager and nurse educator. See id. at 4. In March 2021, however, Cape Fear hired two younger and less experienced nurses. See id. at 4–5, 12. Hoyle alleges Cape Fear refused to consider her for those two positions because Hoyle is white and Cape Fear's Human Resource Department "is primarily [b]lack/African American[] . . . ." Id. at 5.

On May 11, 2021, Hoyle underwent surgery on her left foot, which impaired her ability to walk and required physical therapy. See id. at 12. Cape Fear approved Hoyle's request for leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et. seq. On August 9, 2021, Hoyle returned to work. See id. at 2, 5, 12. After returning to work, Hoyle alleges a new patient care manager, Jerri Musselwhite ("Musselwhite"), did not offer her an accommodation even though "it was visibly obvious [Hoyle] was suffering with every step." Id. at 12. Musselwhite also allegedly told Hoyle that Hoyle "was too old and needed to find another position." Id.

On August 26, 2021, Musselwhite texted Hoyle and told Hoyle that the two of them needed to "discuss some things." Id. at 13. On August 27, 2021, Hoyle met with Musselwhite and Alicia Shields ("Shields"), Cape Fear's employment relations and human resources director. See id. at 12–14. At this meeting, Shields allegedly accused Hoyle of "being racist." Id. at 14. At the meeting, Hoyle denied being racist but resigned to stop the alleged harassment. See id. at 13. Hoyle alleges Shields and Musselwhite's actions amounted to a constructive discharge. See id. at

8, 13–14. Moreover, Cape Fear declined to let Hoyle "rescind her resignation" and banned her from working in its facilities. See id. at 13–14.

On February 7, 2022, Hoyle filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Cape Fear alleging that Cape Fear declined to promote her and terminated her employment because of her "race, age . . . , national origin and/or ethnicity, sex, color, [and] disability." [D.E. 20-2] 2. On November 15, 2023, the EEOC issued Hoyle a right to sue notice. See [D.E. 34-4].

## II.

Cape Fear moves to dismiss Hoyle's amended complaint. See [D.E. 29] 1; Fed. R. Civ. P. 12(b)(1), (6). A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Fed. R. Civ. P. 12(b)(1). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). When considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff must establish that this court has subject-matter jurisdiction over her claims. See, e.g., Steel, 523 U.S. at 104; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject[-]matter jurisdiction, the . . . court must apply a standard

patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus.,

Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## A.

Cape Fear argues Hoyle failed to exhaust her administrative remedies for a retaliation claim under Title VII and the ADA because Hoyle's EEOC charge does not allege retaliation. See [D.E. 29] 6–10. Before a person may file a claim in court under Title VII or the ADA, the person must file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(e)(1). An EEOC charge suffices "only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quotation omitted); see Miles v. Dell, Inc., 429 F.3d 480, 491–92 (4th Cir. 2005). Moreover, the content of the EEOC charge determines the scope of plaintiff's right to maintain a Title VII claim or ADA claim in court. See, e.g., Hentosh v. Old Dominion Univ., 767 F.3d 413, 416–17 (4th Cir. 2014), abrogated on other grounds by Fort Bend Cnty. v. Davis, 587 U.S. 541 (2019); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by

reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see Sydnor v. Fairfax Cnty., 681 F.3d 591, 593–94 (4th Cir. 2012); Miles, 429 F.3d at 491–92; Bryant, 288 F.3d at 132–33. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Davis, 547 U.S. at 547; see Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011). The same principle applies to a plaintiff who files an EEOC charge with respect to one adverse employment action (such as a failure to promote), but then seeks to expand the formal litigation claim to a separate adverse employment action (such as a termination). See Bonds, 629 F.3d at 379–80; Jones, 551 F.3d at 300; Miles, 429 F.3d at 491–92; Chacko, 429 F.3d at 509; Bryant, 288 F.3d at 132–33; Evans, 80 F.3d at 963. The rationale behind these principles concerning the scope of an EEOC charge relates to providing fair notice to an employer concerning a charge and permitting the EEOC to investigate and (if appropriate) to resolve the dispute without a lawsuit. See, e.g., Chacko, 429 F.3d at 508–09, 513; Miles, 429 F.3d at 491.

In her EEOC charge, Hoyle did not allege retaliation under Title VII or the ADA. See [D.E. 34-1] 2. Likewise, the EEOC did not interpret Hoyle's charge as alleging retaliation under Title VII or the ADA. See [D.E. 29-2] 2. Moreover, Hoyle admits she did not allege retaliation in her EEOC charge. See Am. Compl. 9. Thus, Hoyle failed to exhaust her administrative remedies as to her Title VII and ADA retaliation claims, and the court dismisses as unexhausted counts four and seven of her amended complaint.

B.

As for Hoyle's failure-to-promote claims under Title VII and the ADEA, Hoyle alleges that

she expressed interest in two open positions in March 2021. See Am. Compl. 2, 4–5, 12. Cape Fear, however, promoted two younger and less experienced nurses. See id.

Under Title VII and the ADEA, a person must file her EEOC charge within 180 days of each alleged discrete act of discrimination under Title VII. See, e.g., 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)–(3); Davis, 587 U.S. at 543–44; Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109–15 (2002); EEOC v. Com. Off. Prods. Co., 486 U.S. 107, 110 (1988); Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004); Bryant, 288 F.3d at 132; Coleman v. Altec, Inc., No. 5:16-CV-954, 2018 WL 4289610, at *2 (E.D.N.C. Sept. 7, 2018) (unpublished); Young v. Onslow Water & Sewer Auth., No. 7:16-CV-259, 2018 WL 405975, at *4 (E.D.N.C. Jan. 12, 2018) (unpublished); Barcliff v. N.C. League of Muns., No. 5:10-CV-244, 2011 WL 3290578, at *2 (E.D.N.C. Aug. 1, 2011) (unpublished); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539 (E.D.N.C. 2008); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 606 n.3 (E.D.N.C. 2006). If a party fails to timely file an EEOC charge, the party "lose[s] the ability to recover for" that claim because the claim is not "actionable." Morgan, 536 U.S. at 110, 113. Only adverse employment actions "that took place within the timely filing period are actionable." Id. at 114; see Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 623–24 (2007), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; Williams, 370 F.3d at 428; Evans, 80 F.3d at 963; Coleman, 2018 WL 4289610, at *2; Young, 2018 WL 405975, at *4–5; Cooper v. Smithfield Packing Inc., No. 5:10-CV-479, 2011 WL 3207912, at *3 (E.D.N.C. July 27, 2011) (unpublished); Barcliff, 2011 WL 3290578, at *4; McDougal-Wilson, 427 F. Supp. 2d at 606 n.3.

Determining the timeliness of plaintiffs' EEOC charges requires the court to identify the precise "unlawful employment practice" at issue. Del. State Coll. v. Ricks, 449 U.S. 250, 257

(1980). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Id.; United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." Ricks, 449 U.S. at 258 (quotation omitted); United Air Lines, Inc., 431 U.S. at 558. The cause of action arises under Title VII or the ADEA "when the employee receives unequivocal notice of the facts giving rise to [her] claim or a reasonable person would know of the facts giving rise to a claim." Burfield v. Brown, Moore & Flint, Inc., 51 F.3d 583, 589 (5th Cir. 1995) (per curiam); see Hearn v. Town of Oak Island, No. 21-1598, 2022 WL 7935994, at *1 (4th Cir. Oct. 14, 2022) (per curiam) (unpublished); Martin v. Sw. Va. Gas Co., 135 F.3d 307, 310 (4th Cir. 1998) (collecting cases); English v. Whitfield, 858 F.2d 957, 961–62 (4th Cir. 1988).

Hoyle alleges that Cape Fear did not promote her in March 2021. See Am. Compl. 2, 4–5, 12. Hoyle, however, did not file her EEOC charge until February 7, 2022. See [D.E. 20-2] 2. Thus, the court dismisses as untimely Hoyle's failure-to-promote-claims. See, e.g., Morgan, 536 U.S. at 113.

## C.

In counts one and two, Hoyle alleges race and national origin discrimination in violation of Title VII. Title VII prohibits an employer from discharging an employee "because of such individual's" race or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff need not plead a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), to survive a motion to dismiss. See, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 515 (2002); Barbour v. Garland, 105 F.4th 579, 590 (4th Cir. 2024); Holloway v. Maryland, 32 F. 4th 293, 298 (4th Cir. 2022); Bing v. Bravo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020); McCleary-Evans v.

Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015). In order to state a race or national origin discrimination claim under Title VII, Hoyle must plausibly allege that Cape Fear discriminated against her because of her race or national origin with respect to her compensation, terms, conditions, or privilege of employment. See, e.g., Kelly v. Town of Abingdon, 90 F.4th 158, 169 (4th Cir. 2024); Holloway, 32 F.4th at 299; Lemon v. Myers Bigel, P.A., 985 F.3d 392, 399–400 (4th Cir. 2021); Bing, 959 F 3d. at 616–17; McCleary-Evans, 780 F.3d at 585–86; Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006), overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015) (en banc).

In considering whether Hoyle plausibly alleged a race or national origin discrimination claim under Title VII, Hoyle must plausibly allege an adverse employment action. See, e.g., Muldrow v. City of St. Louis, 601 U.S. 346, 355 (2024); Holloway, 32 F.4th at 299; Bing, 959 F.3d. at 616–17; McCleary-Evans, 780 F.3d at 585–86. An adverse employment action does not require a "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar" change in working conditions. Muldrow, 601 U.S. at 355 (quotation omitted). Rather, it requires "some harm respecting an identifiable term or condition of employment." Id.; see Yates v. Spring Indep. Sch. Dist., 115 F.4th 414, 420 (5th Cir. 2024); Stratton v. Bentley Univ., 113 F.4th 25, 38 n.6 (1st Cir. 2024); Peifer v. Bd. of Prob. & Parole, 106 F.4th 270, 277 (3d Cir. 2024); Rios v. Centerra Grp. LLC, 106 F.4th 101, 112 (1st Cir. 2024); Cole v. Grp. Health Plan, Inc., 105 F.4th 1110, 1114 (8th Cir. 2024); Milczak v. Gen. Motors, LLC, 102 F.4th 772, 787 (6th Cir. 2024), reh'g denied sub nom. Mllczak v. Gen. Motors, LLC, No. 23-1462, 2024 WL 3205990 (6th Cir. June 17, 2024) (unpublished). Moreover, to "discriminate against means [to] treat worse." Muldrow, 601 U.S. at 355 (quotation omitted). An employee need only be "treat[ed] worse" respecting an identifiable term, condition,

or privilege of employment based on her protected status, such as sex. Id. Thus, an adverse employment action includes a "disadvantageous change to the compensation, terms, conditions, or privileges of employment because of a protected status." Cole, 105 F.4th at 1114; see Rios, 106 F.4th at 112.

In Muldrow, a female police sergeant filed a Tile VII sex discrimination claim and alleged that the St. Louis Police Department transferred her from one job as a sergeant to another job as a sergeant because she was a woman. See Muldrow, 601 U.S. at 350. Specifically, she alleged that the St. Louis Police Department transferred her from a plainclothes job in the Intelligence Division to a uniformed job in the Department's Fifth District because of her sex. Id. at 351. Although the sergeant's "rank and pay remained the same in the new position, her responsibilities, perks, and schedule did not." Id. With respect to the requirement of an adverse employment action, the Supreme Court held that a Title VII plaintiff alleging a sexually discriminatory transfer had to show "that the transfer brought about some 'disadvantageous' change in an employment term or condition." Id. at 354 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)). The Supreme Court explained that the phrase "terms, conditions, or privileges of employment" used in Title VII "is not used in the narrow contractual sense; it covers more than the economic or tangible." Id. (quotations omitted). Nonetheless, "[t]o make out a Title VII discrimination claim, a [claimant] must show some harm respecting an identifiable term or condition of employment." Id. at 354–55.

A plaintiff may establish a Title VII violation in two ways. First, a plaintiff can show through direct evidence that racial discrimination motivated an employer's adverse employment action. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, if a plaintiff lacks direct evidence of race or national origin discrimination (as in this

case), a plaintiff can proceed under the McDonnell Douglas, 411 U.S. at 802–03, burden-shifting framework. See Hill, 354 F.3d at 284–85. The McDonnell Douglas framework consists of three steps: "(1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016). The McDonnell Douglas framework applies to termination claims under Title VII. See, e.g., Williams, 370 F.3d at 430; Beall v. Abbott Lab'ys, 130 F.3d 614, 619 (4th Cir. 1997), abrogated in part on other grounds by Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134 (4th Cir. 2007).

To establish a prima facie case of race or national origin discrimination, Hoyle must show that (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was fulfilling her employer's legitimate expectations at the time of the adverse action, and (4) she was treated differently than a similarly situated employee outside the protected class. See, e.g., Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619, 626 (4th Cir. 2015), abrogated in part on other grounds by Bing, 959 F.3d 605; White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); Tahir v. Sessions, No. 5:16-CV-781, 2017 WL 1735158, at *4 (E.D.N.C. May 2, 2017) (unpublished), aff'd, 703 F. App'x 211 (4th Cir. 2017) (per curiam) (unpublished).

To establish a valid comparator, the plaintiff must show that she and the comparator were "similar in all relevant respects." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam) (unpublished); see Smith v. Stratus Comput., Inc., 40 F.3d 11, 17 (1st Cir. 1994); Barski v. Cyberdata Techs., Inc., No. 8:17-CV-3593, 2020 WL 4471827, at *6 (D. Md. Aug. 4, 2020)

(unpublished); Wilson v. City of Chesapeake, 290 F. Supp. 3d 444, 457 (E.D. Va. 2018), aff'd, 738 F. App'x 169 (4th Cir. 2018) (per curiam) (unpublished). The comparator must have "dealt with the same supervisor, . . . been subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); see Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019); Haywood, 387 F. App'x at 359; Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Wilson, 290 F. Supp. 3d at 457–58. However, "a comparison between similar employees will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." Haynes, 922 F.3d at 223 (quotation omitted); see Cook, 988 F.2d at 511; Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985). In the disciplinary context, "[t]he most important variables . . . and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." Moore, 754 F.2d at 1105.

Hoyle alleges she "was forced to hear non-citizen travel nurses . . . discuss their hourly wages of $95.00 per hour, while [Hoyle] with many years of experience was paid a mere hourly sum of $28.02 per hour." Am. Compl. 4. Hoyle also alleges that Cape Fear's human resource department "is primarily Black/African American" and Hoyle is white. See id. at 5. Furthermore, Hoyle alleges Shields falsely accused Hoyle of being racist and thereby constructively discharged her. See id. at 6. Moreover, Hoyle claims Cape Fear made unspecified "accommodations for a young Filipino nurse" but not for Hoyle. Id. at 7.

A constructive discharge claim requires Hoyle to plausibly allege her "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt

compelled to resign." Green v. Brennan, 578 U.S. 547, 555 (2016) (quotation omitted); see Pa. State Police v. Suders, 542 U.S. 129, 147 (2004); Kelly, 90 F.4th at 169 n.7; Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 235 (4th Cir. 2022); E.E.O.C. v. Consol Energy, Inc., 860 F.3d 131, 144–45 (4th Cir. 2017). The standard for intolerable working conditions sufficient to create a constructive discharge is higher than that for a hostile work environment claim. See, e.g., Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019). "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" do not constitute objectively intolerable conditions. Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (quotation omitted).

"Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, [the Fourth Circuit] has insisted that it be carefully cabined." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 (4th Cir. 2004) (quotation omitted), abrogated on other grounds by Green, 578 U.S. 547. A plaintiff who fails to plausibly allege a hostile work environment necessarily fails to plausibly allege a constructive discharge. See, e.g., Suders, 542 U.S. at 147; Soto v. Town of Rolesville, 729 F. Supp. 3d 533, 549 (E.D.N.C. 2024); Sunkins v. Hampton Roads Connector Partners, 701 F. Supp. 3d 342, 356 (E.D. Va. 2023). This principle dooms Hoyle's constructive discharge claim. Cf. Holloway, 32 F.4th at 300–01 (affirming the dismissal of a hostile work environment claim where the "complaint falls considerably short of alleging an abusive work environment"). Thus, the court dismisses Hoyle's claims that Cape Fear constructively discharged her in violation of Title VII.

Alternatively, Hoyle fails to plausibly allege any valid comparator concerning Cape Fear's alleged constructive termination of Hoyle's employment. Absent a valid comparator, Hoyle's race discrimination and national origin discrimination claims fail. See, e.g., McDonnell Douglas, 411

U.S. at 804; Cosby v. S.C. Prob., Parole & Pardon Servs., 93 F.4th 707, 714–17 (4th Cir. 2024); Spencer v. Va. State Univ., 919 F.3d 199, 207–08 (4th Cir. 2019); Haywood, 387 F. App'x at 359–60; Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008); Cook, 988 F.2d at 511; Moore, 754 F.2d at 1105–06; Matney v. Del Toro, No. 2:21-CV-2554, 2023 WL 6644591, at *15 (D.S.C. June 29, 2023) (unpublished), report and recommendation adopted by 2023 WL 6370658 (D.S.C. Sept. 30, 2023) (unpublished); Iskander v. Dep't of Navy, 116 F. Supp. 3d 669, 679–80 (E.D.N.C.), aff'd, 625 F. App'x 211 (4th Cir. 2015) (per curiam) (unpublished). Accordingly, the court grants Cape Fear's motion to dismiss counts one and two of the amended complaint.

Alternatively, Hoyle fails to plausibly allege that Cape Fear treated her differently because of her race or national origin. For example, Hoyle contends that she had to listen to non-citizen travel nurses discuss their higher hourly wage. Hoyle, however, does not describe the race or national origin of these travel nurses. Moreover, and in any event, Hoyle was not a travel nurse and was not similarly situated to travel nurses. Likewise, even if Cape Fear's human resources department "is primarily Black/African American" and Hoyle is white, those two facts are not evidence that Cape Fear discriminated against Hoyle because of Hoyle's race or national origin. See, e.g., McCleary-Evans, 780 F.3d at 585–86. The same conclusion holds true concerning Shields's alleged accusation of racism or Cape Fear's alleged unidentified accommodation of a "young Filipino nurse." See id.

In opposition to this conclusion, Hoyle insists that Cape Fear committed "reverse discrimination" against her and that Hoyle "is of a [p]rotected race . . . ." Am. Compl. 3. Hoyle is in a protected class and can allege race and national origin discrimination. See McDonald v. Santa Fe Transp. Co., 427 U.S. 273, 280 (1975); Lucas v. Dole, 835 F.2d 532, 534 (4th Cir. 1987). Moreover, Hoyle need not plead to some higher standard as a white woman. See Lucas, 838 F.2d

at 534; cf. Ames v. Ohio Dep't of Youth Servs., 87 F.4th 822, 825 (6th Cir. 2023) (per curiam), cert. granted, 145 S. Ct. 118 (2024). Nonetheless, Hoyle still must plausibly allege that Cape Fear terminated her because of her race or national origin. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 569–70; McCleary-Evans, 780 F.3d at 585. Hoyle's conclusions about race and national origin discrimination fail to move her claims from possible to plausible. Accordingly, the court grants Cape Fear's motion to dismiss counts one and two of the amended complaint. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 569–70; McCleary-Evans, 780 F.3d at 585.

### D.

In count three, Hoyle alleges a racially hostile work environment claim under Title VII. To state a hostile work environment claim, an employee must plausibly allege that (1) she experienced unwelcome conduct, (2) the conduct was based on a protected characteristic under the relevant statute, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. See, e.g., Cosby, 93 F.4th at 716; Laurent-Workman v. Wormuth, 54 F.4th 201, 210–12 (4th Cir. 2022); Chapman, 48 F.4th at 229; Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019); Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto, 786 F.3d at 277; Okoli v. City of Balt., 648 F.3d 216, 220–21 (4th Cir. 2011); E.E.O.C. v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Evans v. Capitol Broad. Co., 716 F. Supp. 3d 387, 402–04 (E.D.N.C. 2024); Coleman v. Altec, Inc., No. 5:16-CV-954, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (unpublished); Brown v. Wake Cnty. Gov't, No. 5:16-CV-806, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished). An employee also must plausibly allege that her protected characteristic was the "but for" cause

of the alleged harassment. See, e.g., Gilliam, 474 F.3d at 142.

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter her conditions of employment. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Forklift Sys., Inc., 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Forklift Sys., Inc., 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and

isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds, 629 F.3d at 385–86; Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81; Walker, 775 F.3d at 207–10; Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22.

"The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by simple recitation of the words used or the physical acts performed." Oncale, 523 U.S. at 81–82. "Common sense, and an appropriate sensitivity to social context," will enable courts to distinguish between teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive treatment and "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive" based on a protected characteristic. Id. at 82; Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772–73 (4th Cir. 1997).

Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5. In assessing the severity of the harassing conduct, the status of the harasser is an important factor. See Boyer-Liberto, 786 F.3d at 278; Sonnier v. Diamond

Healthcare Corp., 114 F. Supp. 3d 349, 356 (E.D. Va. 2015). A "supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998); see Boyer-Liberto, 786 F.3d at 278.

To impute liability to an employer for an employee's harassment, a plaintiff must demonstrate that "after having acquired actual or constructive knowledge of the allegedly harassing conduct, the employer had taken no prompt and adequate remedial action to correct it." Mikels v. City of Durham, 183 F.3d 323, 329 (4th Cir. 1999) (alteration and quotation omitted) (collecting cases); see Pryor, 791 F.3d at 498; Freeman, 750 F.3d at 423; E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 669 (4th Cir. 2011); E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 319 (4th Cir. 2008). As for an employer's remedial actions, "Title VII requires only that the employer take steps reasonably likely to stop the harassment." Bazemore v. Best Buy, 957 F.3d 195, 202 (4th Cir. 2020) (quotation omitted); see Xerxes Corp., 639 F.3d at 669. In assessing remedial actions, the court must consider, inter alia, "the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective" in stopping the conduct of which plaintiff complains. Xerxes Corp., 639 F.3d at 669; see Bazemore, 957 F.3d at 202; Pryor, 791 F.3d at 498. "[S]o long as discipline is reasonably calculated to end the [offensive] behavior, the exact disciplinary actions lie within [the employer's] discretion." Bazemore, 957 F.3d at 202. "A remedial action that effectively stops the harassment will be deemed adequate as a matter of law." Xerxes Corp., 639 F.3d at 670 (quotation omitted); Bazemore, 957 F.3d at 201–02.

Hoyle alleges Musselwhite harassed her by following her around the hospital (including into the restroom) and scrutinizing Hoyle's work assignments. Hoyle also alleges Shields falsely accused Hoyle of being a racist. See Am. Compl. 5–9, 12–14.

To state a hostile work environment claim, Hoyle must plausibly allege that her race was the "but for" cause of the alleged harassment. See Gilliam, 474 F.3d at 142; Ocheltree, 335 F.3d at 338. Hoyle also must plausibly allege that the conduct was sufficiently severe or pervasive to alter her conditions of employment. See, e.g., Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; Oncale, 523 U.S. at 80; Bonds, 629 F.3d at 385–86; Baqir, 434 F.3d at 746–47.

Hoyle fails to plausibly allege that the conduct was sufficiently severe or pervasive to alter her conditions of employment. Hoyle also fails to plausibly allege that Musselwhite or Shields engaged in the alleged conduct because of Hoyle's race. Accordingly, the court grants Cape Fear's motion to dismiss count three.

E.

In count five, Hoyle alleges an ADEA discrimination claim against Cape Fear. The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To survive a motion to dismiss, a plaintiff must plausibly allege "that age constituted the but-for cause of the adverse employment action." Bandy v. City of Salem, 59 F.4th 705, 710 (4th Cir. 2023); see Gross v. FBL Fin. Servs., 557 U.S. 167, 176 (2009). Merely alleging that age was one of multiple motives for an employer's adverse employment action does not suffice. See Bandy, 59 F.4th at 710; Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019). Rather, the employee must plausibly allege "that the employer would not have taken the adverse employment action in the absence of age discrimination." Bandy, 59 F.4th at 710 (cleaned up); see Gross, 557 U.S. at 177; Westmoreland, 924 F.3d at 725.

In order to state an age discrimination claim under the ADEA, Hoyle must plausibly allege,

20

inter alia, that she was at least age 40 and that Cape Fear took an adverse employment action against her because of her age. See 29 U.S.C. § 623(a)(1); Gross, 557 U.S. at 176; Bandy, 59 F.4th at 710.

Hoyle plausibly alleges that Cape Fear is her employer and that she is over 40 years old. See Am. Compl. 1. As for an adverse employment action, Hoyle alleges that Musselwhite made Hoyle walk long distances during her shifts, criticized her work, and once said she was too old for the job. See id. at 5, 8. Musselwhite's alleged conduct and one stray remark do not constitute adverse employment action. See, e.g., Muldrow, 601 U.S. at 354–55; Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511–12 (4th Cir. 1994); EEOC v. Clay Printing Co., 955 F.2d 936, 942–43 (4th Cir. 1992).

Hoyle also alleges that Cape Fear constructively terminated her employment during the meeting where Shields allegedly falsely accused Hoyle of being a racist and Hoyle resigned to stop the alleged harassment. See Am. Compl. 8, 13–14. As discussed, Hoyle fails to plausibly allege facts sufficient to show constructive discharge. Thus, the court dismisses Hoyle's ADEA claim.

Alternatively, even viewing Hoyle's amended complaint in the light most favorable to her and even assuming Cape Fear terminated Hoyle's employment, Hoyle fails to plausibly allege that Cape Fear terminated her employment because of her age. See Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63; O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312–14 (1996); see also McCleary-Evans, 780 F.3d at 585–88; Gomez v. Haystax Tech., Inc., 292 F. Supp. 3d 676, 686–87 (E.D. Va. 2017), aff'd, 761 F. App'x 220 (4th Cir. 2019) (per curiam) (unpublished). Accordingly, the court grants Cape Fear's motion to dismiss count five of the amended complaint.

F.

In count six, Hoyle alleges disability discrimination in violation of Title I of the ADA. Title I of the ADA applies to employment and prevents discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A plaintiff may assert an ADA claim against her employer based on (1) intentional discrimination or disparate treatment; (2) disparate impact; or (3) failure to make reasonable accommodations. See Raytheon Co. v. Hernandez, 540 U.S. 44, 52–53 (2003); Prentice v. North Carolina, No. 5:20-CT-3150, 2023 WL 2533164, at *4 (E.D.N.C. Mar. 3, 2023) (unpublished), aff'd sub nom. Prentice v. Haynes, No. 23-6243, 2023 WL 6442566 (4th Cir. Oct. 3, 2023) (per curiam) (unpublished); see also A Helping Hand, LLC v. Balt. Cnty., 515 F.3d 356, 362 (4th Cir. 2008). A plaintiff may prove such discrimination through direct evidence or through the McDonnell Douglas burden-shifting framework. See Raytheon, 540 U.S. at 49–50 & n.3; Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985); McDonnell Douglas, 411 U.S. at 802–04.

As with her other discrimination claims, Hoyle need not plead a prima facie case to survive a motion to dismiss. See Swierkiewicz, 534 U.S. at 508, 515. Nonetheless, Hoyle still must plausibly "allege facts sufficient to state all the elements of [her] claim." Jordan, 458 F.3d at 346 (cleaned up), overruled on other grounds by Boyer-Liberto, 786 F.3d 264; see Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 569–70; McCleary-Evans, 780 F.3d at 585.

To establish a disability discrimination claim under Title I of the ADA, a plaintiff must prove "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in

22

question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572 (4th Cir. 2015) (quotation omitted) (alteration in original); see EEOC v. McLeod Health, Inc., 914 F.3d 876, 883 (4th Cir. 2019). A disability under the ADA must "substantially limit[] one or more [of the plaintiff's] major life activities." 42 U.S.C. § 12102(1)(A); see J.D. by Doherty v. Colonial Williamsburg Found., 925 F.3d 663, 670 (4th Cir. 2019); Jacobs, 780 F.3d at 572–74. An adverse action includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc., 524 U.S. at 761; see Muldrow, 601 U.S. at 354–55; Laird v. Fairfax Cnty., 978 F.3d 887, 893 (4th Cir. 2020).

The court assumes without deciding that Hoyle plausibly alleges a disability from her foot surgery on May 11, 2021. See Am. Compl. 2, 4. The court also assumes without deciding that Hoyle plausibly alleges that she was qualified to perform her job and performed the essential functions of her job without reasonable accommodation. See id. at 2, 4. Hoyle, however, fails to plausibly allege that Cape Fear took adverse action because of Hoyle's alleged disability. Likewise, Hoyle fails to plausibly allege her accommodation requests, Cape Fear's alleged denial of those requests, or how those alleged accommodations would have allowed her to perform the essential functions of her job. See, e.g., Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). Accordingly, the court grants defendant's motion to dismiss count six.

G.

In count eight, Hoyle alleges wrongful discharge in violation of North Carolina public policy. Hoyle, however, resigned. Thus, the court construes Hoyle's claim as a wrongful constructive discharge claim in violation of public policy.

23

For this claim, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex. rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.8 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

North Carolina does not recognize a claim for wrongful constructive discharge in violation of public policy. See, e.g., Whitt v. Harris Teeter, Inc., 359 N.C. 625, 614 S.E.2d 531, 532 (2005) (per curiam); Batchelor v. City of Wilson, 747 F. Supp. 3d 845, 864 (E.D.N.C. 2024) (collecting cases); Gelin v. N-Able Techs., Inc., No. 5:22-CV-345, 2023 WL 3079420, at *4–5 (E.D.N.C. Apr. 25, 2023) (unpublished); EEOC v. 1618 Concepts, Inc., 432 F. Supp. 3d 595, 609 (M.D.N.C. 2020); Miller v. Gerber Collision (Ne.), Inc., No. 4:19-CV-18, 2019 WL 1960337, at *2–3 (E.D.N.C. May

2, 2019) (unpublished). Accordingly, the court dismisses Hoyle's wrongful constructive discharge claim.

III.

In sum, the court DISMISSES AS MOOT defendant's motion to dismiss [D.E. 16], Hoyle's motion to deny defendant's motion to dismiss [D.E. 19], and Hoyle's second motion to deny defendant's motion to dismiss [D.E. 25]. The court GRANTS defendant's motion to dismiss plaintiff's amended complaint [D.E. 28] and DISMISSES WITHOUT PREJUDICE plaintiff's amended complaint.

SO ORDERED. This 7 day of March, 2025.

JAMES C. DEVER III
United States District Judge